**CANTON BOARD OF EDUCATION,**
**Plaintiff,**

v.

**N.B. and R.B., as parents and next friends of M.B., and State of Connecticut Department of Education Defendants.**

**No. 3:04 CV 595 PCD.**

United States District Court,
D. Connecticut.

Oct. 13, 2004.

Lawrence W. Berliner, Klebanoff & Phelan, PC, West Hartford, CT, Ralph E. Urban, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON MOTIONS TO DISMISS

DORSEY, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)[1], Defendants move separately to dismiss the present action. For the reasons stated below, the State Department of Education's ("State") Motion [Doc. No. 8] is **granted**. Defendants N.B. and R.B.'s Motion [Doc. No. 18] is **granted** in part.

## I. BACKGROUND:[2]

The Complaint's Counts each assert violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.* Count One appeals an adverse decision by the hearing officer below.[3] Count Two takes issue with the hearing itself and asserts structural error as to how the state of Connecticut has implemented the IDEA, 20 U.S.C. §§ 1401

Michael Peter McKeon, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Plaintiff.

1. The State moves pursuant to Fed.R.Civ.P. 12(b)(6). N.B. and R.B. move pursuant to both 12(b)(1) and 12(b)(6).

2. Much of the facts alleged in the 58 page Complaint are not immediately relevant to an understanding of the issues at stake in this Ruling. Thus, the factual statement that follows focuses only on those allegations necessary to the resolution of the issues raised herein.

3. The IDEA mandates "federal grants to states to provide disabled children [footnote omitted] with a 'free appropriate public education' in the least restrictive appropriate environment." *Polera v. Bd. of Educ.,* 288 F.3d 478, 481 (2d Cir.2002), *citing* 20 U.S.C. §§ 1400(d)(1)(A); 1401(8); 1411(a)(1); & 1412(a)(5)(A). Such an education must include "special education and related services tailored to meet the unique needs of a particular child ... and be reasonably calculated to enable the child to receive educational benefits." *Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d Cir.1998) (citations omitted). In furtherance of that end, "[e]ducators and parents of a child covered by the IDEA must jointly develop an 'individualized education program' ("IEP") for each year of the child's education." *Polera v. Bd. of Educ.,* 288 F.3d 478, 482 (2d Cir.2002), *citing* 20 U.S.C. §§ 1401(11), 1414(d). "Parents who are dissatisfied with a proposed IEP may file a complaint with the state educational agency." *Walczak,* 142 F.3d at 122, *citing* 20 U.S.C. § 1415(B)(1)(E). Such complaints may be "resolved through an 'impartial due process hearing[.]'" *Id.,citing* 20 U.S.C. § 1415(b)(2). If the parties are dissatisfied with the outcome, the statute provides for suit in federal court. *Id.,citing* 20 U.S.C. § 1415(e)(2).

*et seq.*[4]

Defendant M.B. is a minor. As of April 2004, M.B. was enrolled in the tenth grade at Canton High School. M.B. resides with his father, N.B., in Canton, CT. M.B.'s mother, R.B., resides in Hamden, CT. M.B. has been identified as a student entitled to special education services under the IDEA. N.B. and R.B. requested a due process hearing on January 6, 2003. Plaintiff assigns numerous errors to the handling of this hearing by the hearing officer. In particular, in Count Two, Plaintiff focuses on the hearing officer's handling of the parties requests for clarification of the final decision.

The final decision was issued on January 26, 2004. On February 3, 2004, N.B. and R.B. requested clarification of part of the decision. On February 23, 2004, the hearing officer clarified some aspects of the ruling, but refused to clarify his finding that "The Board's program for the 2003–2004 school year was not appropriate" stating that his "order is clear as to what should happen for the 2003–20004 school year." Compl. ¶ 97.[5] On February 23, 2004, the Plaintiff moved for clarification. There was a dispute as to whether that motion was timely filed. However, on March 4, 2005, the hearing officer ruled, without further explanation, that regardless of "[w]hether the request was timely . . . the Motion for Clarification is denied." Compl. ¶ 98.

Plaintiff asserts that the "refusal to specify in the Decision a basis for finding the 2003–20004 IEP inappropriate and of his refusal to clarify the inherent ambiguity of that part of the Decision is clearly contrary to and violative of established law, made upon unlawful procedure, affected by other error of law, clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, and arbitrary, capricious or characterized by abuse of discretion." Compl.

4. Plaintiff also states that this action is brought pursuant to Conn. Gen.Stat. § 10–76h(c)(1). Compl. ¶ 1. Plaintiff does not, however, frame a separate count or cause of action based on this statute but fashions the two counts based on the IDEA alone. Accordingly, the Court will not constructively amend the Complaint to add a third count.
  It is also noted that within Count Two, Plaintiff makes numerous reference to the 14th amendment and 42 U.S.C. § 1983. Plaintiff does so without constructing a separate cause of action on those grounds. The Court will not infer such a claim and Count Two is deemed only to raise an IDEA claim. However, even if Plaintiff had clearly stated a separate 14th amendment and § 1983 claim, notwithstanding 20 U.S.C. § 1415(1), it is not clear that § 1983 would provide any substantive basis for relief beyond what is available under the IDEA. While § 1983 may allow recovery of monetary damages based on a violation of the IDEA, *Polera*, 288 F.3d 478, 483 n. 5, the IDEA's provisions for a due process hearing, 20 U.S.C. § 1415(b)(2), are of course coextensive with due process rights under the 14th amendment, *see Molzof v. United States*, 502 U.S. 301, 307, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992) ("Where Congress borrows terms of art . . . it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . and the meaning its use will convey to the judicial mind unless otherwise instructed") (citation omitted). Thus, inasmuch as Plaintiff alleges a due process violation based on the handling of the due process hearing below, the substantive requirements under the IDEA would not differ from the 14th Amendment. Furthermore, 20 U.S.C. § 1403(a)'s waiver of state sovereign immunity extends only to actions brought pursuant to the IDEA and not § 1983 claims. *Bd. of Educ. v. Schutz*, 290 F.3d 476, 480 (2d Cir.2002).

5. The Complaint refers to two different dates for the hearing officer's ruling on N.B. and R.B.'s motion for clarification—February 23 and 26. *See* Compl. ¶¶ 96, 97. It is unclear from the papers submitted whether two rulings issued or whether one of the dates is incorrect.

¶ 141. Furthermore, Plaintiff argues that the hearing officer's actions constitute "deliberate indifference to the rights of the Board as well as to the duties and obligations under both federal and state law." Compl. ¶ 145. Presumably on this basis and on other "information and belief," the Board asserts that "the State Department of Education has declined and failed to establish procedures, policies or training for hearing officers regarding the hearing officers' obligation to ensure that their decisions comport with the fundamental right of parties to receive decisions that are clear and understandable." Compl. ¶ 146.[6] Allegedly, there has been no training "underscoring [the hearing officers'] obligation to provide clarification when requested by the parties." Compl. ¶ 146. As a result, Plaintiff asserts that it has been deprived of its due process rights under both the IDEA and the Fourteenth Amendment. Compl. ¶ 148.[7]

Based on the violations alleged in Counts One and Two, Plaintiff requests the right to introduce evidence at trial, a jury trial, reversal of the final decisions, compensatory damages, judgment in favor of the Board, and any other relief deemed just and fit.

## II. STANDARD OF REVIEW:

A Rule 12(b)(1) motion seeks dismissal of a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The burden of establishing subject matter jurisdiction lies with the plaintiff. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

A Rule 12(b)(6) motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.2001), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A motion to dismiss must be decided on the facts alleged in the complaint. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir.2001). All facts in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 390 n. 1 (2d Cir. 2001).

## III. DISCUSSION:

The two Motions to Dismiss deal respectively with the claims against each Defendant and will be addressed separately.

### A. State of Connecticut Department of Education's Motion to Dismiss:

The disputed portion of the State's Motion to Dismiss addresses Count Two of the Complaint[8], which asserts, pursuant to

---

6. The "Department of Education shall provide training to hearing officers in administrative hearing procedures, including due process, and in the special educational needs of children." Conn. Gen.Stat. § 10–76h(c)(1). The exact source of the "fundamental right" to decisions that are "clear and understandable" is unclear. It would seem to refer to the notice requirements enshrined in procedural due process. *See Groppi v. Leslie*, 404 U.S. 496, 502, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972) ("[R]easonable notice . . . and an opportunity to be heard in defense before punishment is imposed are basic in our system of jurisprudence") (citations and quotations omitted).

7. As stated, it is presumed that the due process codified in the IDEA is the same as that of the 14th Amendment. Plaintiff has cited no authority stating the contrary.

8. Count One of Plaintiff's Complaint suggests that it is addressed to the State as well. The State, however, argues that it is not a proper party to an appeal of the hearing officer's decision. Dept. Mem. Supp. Mot. to Dismiss at 2. Plaintiff does not contest this argument in its Opposition Brief. Accordingly, the State's Motion to Dismiss Count One with respect to itself is granted absent opposition.

the IDEA, a systemic violation of Plaintiff's due process rights through the State's failure to properly train its hearing officers regarding the scope of due process and the rights afforded under it. Compl. ¶¶ 138–151. The State argues that this assertion fails to adequately allege a systemic claim and that Count Two must therefore be dismissed.

A systemic claim "implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act[.]" *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir.1997). A claim is not systemic "if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Id.; see also M v. Bridgeport Bd. of Educ.*, 96 F.Supp.2d 124, 134 (D.Conn.2000) (Claim is not systemic because it challenges "the determinations … of each child's abilities and educational status, not the procedures or framework for assessment"). Systemic claims are often discussed in the context of exhaustion requirements under the IDEA, from which they are exempt. *See e.g. Doe*, 111 F.3d at 683; *Heldman v. Sobol*, 962 F.2d at 159; *Mrs. W. v. Tirozzi*, 832 F.2d 748, 757 (2d Cir.1987); *M v. Bridgeport*, 96 F.Supp.2d at 134. Although, the necessity of exhaustion in the cited cases is different than the present question, the courts examined the sufficiency of the claims of systemic violations and are thus instructive.

In *Heldman*, the Second Circuit permitted a systemic claim to avoid administrative exhaustion, as to require otherwise, would be futile and "only serve to insulate the state procedures from review—an outcome that would undermine the system Congress selected for the protection of the rights of disabled children." 962 F.2d at

159. The *Heldman* claim challenged New York's procedures for appointing hearing officers, asserting that the procedures did not result in the appointment of impartial hearing officers, thus denying IDEA due process. *Id.* at 155–56. The district court's dismissal of the case on exhaustion and standing grounds was reversed. *Id.* at 159. In *Mrs. W.*, the hearing process was challenged, arguing that the Connecticut Board of Education in Connecticut "has not afforded children … an opportunity for a hearing on matters related to special education" and that "the few hearings that are available are not geared to address system-wide violations[.]" 832 F.2d at 753. The Second Circuit held that the claim should have survived a 12(b)(6) motion on exhaustion grounds, 832 F.2d at 757.

In opposition, Plaintiff here argues that it has adequately alleged a systemic claim that the State's failure to train its hearing officers "adversely implicates the integrity of the IDEA's dispute resolution procedures." Mem. Opp. State Mot. to Dismiss at 2–3. Plaintiff's only factual substantiation which implicates the State appears in its allegations that "[u]pon information and belief, the State Department of Education has declined and failed to establish procedures, policies or training for hearing officers regarding the hearing officers' obligation to ensure that their decisions comport with the fundamental right of parties to receive decisions that are clear and understandable" and "[u]pon information and belief, the State Department has declined and failed to establish procedures, policies or training of hearing officers underscoring their obligation to provide clarification when requested by the parties." Compl. ¶ 146. The State compares this case to *Adams v. School Board of Anoka– Hennepin Independent School District*, Civil No. 02–991 (RHK/AJB), 2002 WL 31571207, *3, 2002 U.S. Dist. LEXIS

22444, *7 (D.Minn. Nov. 18, 2002), where a similar claim was dismissed and urges the same result here.

The *Adams* court was faced with an alleged systemic charge that the state defendant failed "to adequately train hearing officers that mediation cannot be used to deny or delay a due process hearing." *Id.* The suit under the IDEA was dismissed as a "private cause of action ... is only available when a party is aggrieved 'by the *findings* and *decision*' of an administrative hearing process, not by a hearing officer's training." *Id.* at 2002 WL 31571207, *3, 2002 U.S. Dist. LEXIS 22444, *8, *citing* 20 U.S.C. § 1415(i)(2)(A) (emphasis in original). Indeed, it is difficult to discern exactly what provision of the IDEA requires states to train their hearing officers in a certain way, or even at all. Plaintiff cites none but simply asserts that it "adversely implicates the integrity of the IDEA's dispute resolution procedures." Pl. Mem. Opp. State Mot. to Dismiss at 3. Absent such a requirement, the bare failure to train does not automatically yield a violation of the IDEA. Rather, the adequacy of the process and notice Plaintiff received or did not receive is decided on whether the hearing comported with constitutional due process as that concept has been incorporated into the IDEA. *See* 20 U.S.C. § 1415(b)(2).

As such, Plaintiff must allege that a failure to train has resulted in a systemic failure to provide adequate due process protections in due process hearings as opposed to provide due process in a particular case. *See Doe,* 111 F.3d at 682 (The nature of a systemic claim is such that "it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves"). Plaintiff alleges only that this particular hearing officer failed to provide it with proper notice because of his lack of training. This is insufficient. To sustain a claim of a systemic violation, Plaintiff would have to allege that a lack of training has rendered the process of handling IDEA claims non-compliant with due process hearing in a substantial number of other proceedings, thus calling into question the resolution process in general. Without more, there is no reason to assume that such training is necessary or that its lack systemically contributes to due process violations. Appointed hearing officers may have an entirely adequate background to understand the requirements of due process and notice without further training. The fact that one hearing officer, who was not trained, mishandled a case, even because of that lack, simply does not suggest a systemic violation.

This case is distinguishable from *Heldman* in which the plaintiff alleged that the appointment procedures resulted in appointing hearing officers beholden to the school district, which violated the IDEA's requirement of an *impartial* due process hearing. 962 F.2d at 155 (emphasis added). By definition, a biased hearing officer cannot conduct an impartial hearing. Plaintiff's allegations do not demonstrate that Connecticut's failure to train hearing officers necessarily precludes IDEA compliant due process hearings. Similarly in *Mrs. W.,* the total absence of a procedure for obtaining hearings was alleged. 832 F.2d at 753.[9] No such total deprivation is here alleged.

Further, Plaintiff's allegations are capable of redress through normal judicial review. *See Doe,* 111 F.3d at 682. This

---

9. It should be noted that *Mrs W* was decided under a prior version of the IDEA, the Education of the Handicapped Act ("EHA"). *See* 832 F.2d at 750–752 (explaining the statutory framework involved).

Court has statutory authority to "grant such relief as the court determines is appropriate" based on a preponderance of the evidence standard of review. 20 U.S.C. § 1415(i)(2)(B)(iii). Plaintiff argues conclusorily that "the hearing officer's failure and refusal to clarify the basis for his decisions, the intent of his decision, or the scope of his decision adversely impacts the parties' ability to address it on appeal." Pl. Mem. Opp. State Mot. to Dismiss at 7–8. It is not clear why Plaintiff cannot raise the very issue of the lack of specificity before this Court by challenging the hearing officer's determination and the basis thereof. The State's Motion to Dismiss [Doc. No. 8] is therefore **granted**.

*B. N.B. and R.B.'s Motion to Dismiss:*

N.B. and R.B. move to dismiss the Complaint on the basis that it requests compensatory damages which are not available against private citizens, Mem. Supp. Def. N.B. Mot. to Dismiss at 4, an argument Plaintiff does not dispute. Plaintiff points to five other requested remedies. Mem. Opp. Def. N.B. Mot. to Dismiss at 2; *see also* Compl. at page 57 (the right to introduce evidence, a trial by jury, the reversal, in part, of the hearing officer's decision, compensatory damages, judgment in favor of the Board, and any other relief the Court deems fit). The claim for compensatory damages against N.B. and R.B. is therefore **dismissed** absent opposition. Courts may dismiss matters in whole or in part. Thus, to the extent that N.B. and R.B. seek dismissal of the entire Complaint, the Motion [Doc. No. 18] is **denied**.

## IV. CONCLUSION:

For the reasons stated herein, the State's Motion to Dismiss [Doc. No. 8] Counts One and Two is **granted** and they are dismissed as against the State Department of Education. N.B. and R.B.'s Motion to Dismiss [Doc. No. 18] is granted in part. Only the request for compensatory damages is dismissed.

SO ORDERED.